47 CCPA

**Application of Edward M. ROTHERMEL
and Russell B. Waddell, Jr.**

Patent Appeal No. 6470.

United States Court of Customs
and Patent Appeals.

March 30, 1960.

Reuben Wolk, I. Louis Wolk, Los Angeles, Cal. (Lawrence B. Biebel, Dayton, Ohio, of counsel), for appellants.

Clarence W. Moore, Arthur H. Behrens, Washington, D. C. (D. Kreider, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JOHNSON (retired), Judges.

SMITH, Judge.

This appeal is from the decision of the Board of Appeals, affirming the examiner's rejection of claims 15 through 20, in appellants' application Serial No. 496,-507, filed March 24, 1955. No claims have been allowed. The application is a continuation in part of application Serial No. 398,126, filed December 14, 1953, and of application Serial No. 448,722, filed August 9, 1954.

The invention relates to reinforced, flexible conduits of the type commonly used as vacuum cleaner hose which must be relatively light weight and flexible. Use of a relatively thin, pliable conduit gives light weight and flexibility but such a conduit would collapse in use. The prior art shows reinforced flexible conduits having an inner reinforcing member in the form of a helical spring over which is secured a thin, pliable conduit covering, hereinafter termed the "sheath." Appellants assert that the conduits of the prior art are bulkier and less flexible than are conduits produced according to the invention here claimed. Such conduits are asserted by appellants to be less durable and less desirable for their intended uses than are the conduits made according to their invention.

Appellants' conduit as here disclosed and claimed consists generally of an inner helical reinforcing member formed from plastic covered wire covered by a sheath formed of a thin plastic deformable tube. Two features of asserted novelty are (1) the relatively smooth inner surface of the conduit and (2) the bonding of the sheath and the helical reinforcing members at the relatively narrow line of contact between the crest of each convolution of the sheath and the outer periphery of the helical reinforcing member. Both of these features are included in the claims on appeal of which claim 15 is representative:

"15. A flexible relatively noncollapsible conduit comprising a circumferential reinforcing member in the form of a coiled helix having spaced turns, said member having a plastic surface, a relatively thin plastic and deformable tube embracing and partially surrounding said reinforcing member, said tube having corrugations formed therein which depend between the turns of the helix, with the inner surface of the tube between the coils of said helix extending substantially to the plane of the innermost surface portion of said coiled member and with the inner surface of said tube which embraces said reinforcing member being *bonded thereto over a portion only of the embraced area at the crests of said corrugations along the outer periphery of said reinforcing member* with the remaining area of said surface embraced by said tube being left unbonded leaving the innermost surface area of the coiled member exposed, the resultant conduit having a corrugated exterior and *a relatively smooth and continuous interior surface* defined by the inner portions of the tube between corrugations and the exposed inner surface of said coiled member, whereby on the application of tension as by bending or stretching the portion of the tube normally embracing but unbonded to the reinforcing member will pull away therefrom and return to embracing position on release of said tension." [Emphasis added.]

The references relied on are:

| | | |
|---|---|---|
| Hopkinson | 489,478 | Jan. 10, 1893 |
| Vance | 2,550,099 | Apr. 24, 1951 |
| Roberts | 2,560,369 | July 10, 1951 |
| Martin et al. | 2,641,302 | June 9, 1953 |

The examiner and the board, while conceding that the conduit claimed in claims 15–20 is novel, have refused to allow the claims, which stand rejected under 35 U.S.C. § 103 as covering an obvious improvement over the prior art.

The rejection of claims 15, 17, and 20 is based on Roberts as the basic reference taken with the secondary references to Vance or Martin. Claims 16, 18 and 19 are similarly rejected but with the

references further modified by the teachings of Hopkinson.

The board also rejected the claims as being directed to features which were not disclosed in the specification as critical features of the invention.

Roberts, the primary reference, discloses a method for making flexible conduits for use in gas masks, anesthetizing equipment and the like. The conduit consists of a helical metal support to which is vulcanized a convoluted rubber tube as the sheath. The convolutions of the sheath extend beyond the metal support and form a corrugated inner surface in the conduit. The helical support and the sheath are vulcanized at all points of contact.

The two secondary references, Vance and Martin may be treated as one. Each discloses a flexible vacuum cleaner hose consisting of a bare wire helix supporting a convoluted plastic sheath. In neither reference is the sheath bonded to the helix. In each, the spaced relationship of the individual coils of the helix is maintained by convolutions formed in the sheath by externally winding a plastic cord around the outside of the plastic sheath and between the individual coils of the helix. The plastic cord is subsequently bonded to the sheath and becomes an integral part of the hose.

Hopkinson discloses a hose having an inner spiral member in the form of a helix formed of hard rubber which is embedded in and completely covered by a flexible sheath. The interior surface of the hose is a cylinder of substantially constant diameter and presents a minimum of interference to a fluid flowing through the sheath.

The flexibility of the conduits covered by the claims on appeal is due to the deformable convolutions of the sheath and the flexibility of the helical support. When such a conduit is flexed, at the outer portion of the bend the spaces between the turns of the helix are increased, while at the inside of the bend the successive turns of the helix are brought closer together. During this action, the convolutions of the sheath are folded and unfolded as required to permit this movement of the successive turns of the helix.

Appellants contend that improved flexibility of their conduit is achieved because of the narrow area of bonding between the crests of the convoluted sheath and the outer periphery of the helical support. They assert that minimum resistance to the flow of air and particles through the conduit is achieved by its relatively smooth and continuous interior.

It is appellants' position that these admittedly novel structural features are not obvious differences over the prior art. In support of this position, appellants filed certain affidavits to prove new and unexpected results as well as the commercial acceptance of conduits made according to their invention. Where, as here, we are faced with the necessity of determining whether a novel change is obvious, such affidavits can be particularly helpful when they are secured from those actually having skill in the art. It is the practice of this court to consider such affidavits when they supply the facts necessary for consideration in making a proper determination of the issues. The conditions under which such affidavits are to be considered were set forth in In re McKenna, 203 F.2d 717, 40 CCPA 937. To these conditions we think there should be added the further requirement that such affidavits should be timely filed before the examiner so that the Board of Appeals as well as this court will have the benefit of his views.

Appellants filed two affidavits of one Ralph C. Osborn. The first was filed after the final rejection by the examiner and the second was filed after the decision of the Board of Appeals. We do not consider such filings to have been timely and, in the absence of any showing justifying such a late filing, we are unwilling now to consider the factual matters contained therein.

The affidavit of Sidney K. Lamden was filed in time but is directed to showing certain sales figures of types of hose

which he asserts were "manufactured in accordance with application Serial No. 448,722" and which, he further asserts, were of the type "described and claimed in" the application here before us. Such general conclusions of a sales manager do not permit us to determine whether the hoses referred to in the Lamden affidavit were, in fact, hoses having the particular characteristics of the invention in the rejected claims. In addition, application Serial No. 448,722 is not before us and we have not been supplied in the record with any information as to its teachings. Viewed as an attempt to show the commercial acceptance of a hose embodying the present invention, this affidavit states at best a series of lay conclusions rather than facts upon which to predicate a judicial determination.

We are unable to find in the Lamden affidavit any statement of facts which support the conclusions we are asked to draw from it. The examiner was properly critical of this affidavit. Accordingly, we have disregarded it in our consideration of the issues.

We are left, therefore, with appellants' disclosure and the teachings of the prior art from which to draw the facts upon which we can base our decision.

The examiner and the board in rejecting the appealed claims did so by what appears to us to be a piecemeal reconstruction of the prior art patents in the light of appellants' disclosure. Thus one element of the claims, the inner reinforcing member, is found in Roberts to be "covered" by the outer sheath because it is embedded therein. As to the deep corrugations of Roberts, we are told by the examiner and the board that they could be made less deep if one desired to provide a smooth surface on the interior of the hose. This assertion is made despite the teachings of Martin that the flexibility of the conduit will increase as the depth of the corrugations is increased.

It is easy now to attribute to this prior art the knowledge which was first made available by appellants and then to assume that it would have been obvious to one having the ordinary skill of the art to make these suggested reconstructions. While such a reconstruction of the art may be an alluring way to rationalize a rejection of claims, it is not the type of rejection which the statute authorizes. 35 U.S.C. § 103 is very specific in requiring that a rejection on the grounds the invention "would have been obvious" must be based on a comparison between the prior art and the subject matter as a whole at the time the invention was made.

The prior art, at the time appellants made their invention, as here shown by Roberts, Martin, Vance and Hopkinson, teaches the use either of a corrugated rubber tube in which a rubber covered spring is embedded in the sheath (Roberts), or a plastic conduit in which the sheath is corrugated over an inner spring but is not secured to it (Martin and Vance). To these teachings, Hopkinson adds the concept that an internal reinforcing hard rubber helix set flush with the internal surface of the hose will provide a smooth inner surface.

To modify and change these references in the manner suggested by the examiner and affirmed by the board is to ignore the precise statutory requirement that obviousness of the differences between the invention sought to be patented and the prior art must be determined as of the time the invention was made. We do not find that anyone in the art, prior to appellants, taught the inventive concept which we find in the appealed claims; specifically the prior art does not show a construction in which a convoluted tube as the sheath is bonded to the coiled reinforcing member only along the outer peripheral area of each coil. A conduit as claimed requires that the sheath partially surround and embrace the coils of the coiled reinforcing member but that the sheath is not bonded to the coils except along the narrow area of contact between the outer periphery of the coils of the spring and the crests of the sheath convolutions.

The prior art at the time the invention was made taught either that the sheath

and reinforcing member should be completely bonded as in Roberts or Hopkinson or that they should not be bonded at all as in Martin or Vance. We do not find in these teachings either alone, or when taken together, any suggestion that a partial bonding along a narrow area of contact between the crests of the convolutions of the outer sheath and the contacting portions of the outer periphery of the coils of the inner reinforcing member will produce the result which appellants desire in their hose, i. e., a readily flexible hose which is produced without decreasing its effective internal cross-sectional area.

If one were to follow the teaching of Roberts and Martin to provide a conduit of comparable flexibility, it would be necessary to increase the depth of the corrugations of the external sheath to increase the flexibility of the hose. Thus, to provide a hose of flexibility comparable to the appellants' hose, the Roberts and Martin teachings would require deeper corrugation of the sheath than is required in appellants' construction. Such deeper corrugations decrease the effective internal cross-sectional area and hence the effective capacity of such a hose. To provide flexibility and capacity comparable to that of the claimed hose, the external dimensions of such a modified Roberts and Martin hose must be made larger than the external dimensions of the claimed hose. At best, the Roberts and Martin conduit having the same flexibility and capacity as the claimed hose would be bulkier. Also, the increased depth of the corrugations of the external sheath as required by the Roberts and Martin teaching to provide a conduit having a flexibility comparable to that of appellants' conduit would form a corrugated hose interior which will increase the turbulence of the air stream flowing therethrough. Appellants contend that such a surface also will entrap a portion of the solid materials suspended in the air stream and will cause a more rapid clogging of the Roberts and Martin hose than is the case in the claimed hose.

The teachings of Martin, Vance and Hopkinson, insofar as they are applicable, show ways in which to provide a smooth interior surface in such a hose by controlling the relative depth of the corrugations of the external sheath and the dimensions of the wire forming the internal reinforcing helix. To secure the sheath to the helix in Martin and Vance, cords are wound over the sheath and folded between the coils of the helix to clamp the sheath to the helix. To follow the Martin teaching and make deeper corrugations in the conduits of Martin and Vance to increase their flexibility results in the production of an unnecessarily bulky and more costly construction than is required to carry the same volume as is carried by a conduit made according to appellants' invention.

Thus, when considered as a whole at the time of appellants' invention, we think the prior art does not make it obvious to one having the ordinary skills of the art how to make a conduit having the characteristics of appellants' claimed conduit.

The problem which appellants found to exist in this art as exemplified by Roberts, Martin, Vance and Hopkinson, was how to make a conduit which would have the required capacity with the least bulk thus effecting savings in weight and cost, and which, at the same time, would be sufficiently flexible to suit it for its intended uses without a high rate of deterioration and without failures in use either due to clogging, rupture, collapse or kinking of the sheath.

█ Viewed after the event, appellants' invention may appear to be simple and as such obvious to those of ordinary skills in this art. This, however, is not a basis upon which to reject the claims. Where the invention for which a patent is sought solves a problem which persisted in the art, we must look to the problem as well as to its solution if we are to properly appraise what was done and to evaluate it against what would be obvious to one having the ordinary skills of the art. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43

S.Ct. 322, 67 L.Ed. 523; Goodyear Tire & Rubber Company, Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

The prior conduits, as shown by the references, did not have the properties which appellants sought. Having ascertained the properties which they desired to have in a vacuum cleaner hose which would solve the problems which then existed in the art, appellants selected those elements from the prior art which were needed to provide the hose which they desired and which was not present in the art at the time when their invention was made. After having selected the elements, there still remained the problem of how to construct and combine them.

The examiner and the board, in holding the present claims to be unpatentable after finding it to be obvious to decrease the depths of the convolutions of the sheath to provide a smooth inner surface in the hose, further considered that the narrow area of bonding of the sheath and the reinforcing member would be obvious to one skilled in the art. Concerning this latter point, the board said:

"In our opinion, if the relationship mentioned * * * produced a significant change in result then this change should have been proved by evidence based on a comparative test of the instant device and the reference device."

We do not agree with the examiner that the use of a narrow area of bonding would be obvious to one skilled in the art without appellants' disclosure. We are further of the opinion that after the disclosure of such bonding as a feature of the device, the improved results may be deductively discerned in the same manner that the examiner deductively discerned the teachings of the prior art references and that no evidence is required to support appellants' position.

Roberts discloses bonding over the full area of contact between the rubber sheath and the supporting helix. Wherever Roberts' sheath is bonded to the helix, its convolutions cannot be deformed. As previously indicated, the flexibility of the hose depends upon deforming the convolutions of the sheath. Thus, any flexibility in the Roberts hose as a result of the convolutions of the sheath is limited to that part of the convolution of the sheath not bonded to the helix.

Applicants, by limiting the area of bonding of the sheath and the reinforcing helix to the contact area between the outer periphery of the coils of the helix and the crests of the convolutions of the sheath, have allowed substantially the entire convolution of the sheath to be free to deform and pull away from the sides of the helix. It is our opinion that this feature is not obvious from the teachings of the prior art.

The remaining ground of rejection relates primarily to the scope of the claims and requires us to consider whether the claims are properly supported by the disclosures in the specification.

The board in its decision has referred to the fact that the specification did not contain any statement "as to the exact angular area of contact between each turn of the spring and the sheath of the instant hose" and then referred to the statements in the specification as "showing a lack of criticality in the disclosure as originally filed to the angular area of the coating of the spring joined to the sheath." In support of this position, the board cited In re Gardiner, 171 F.2d 313, 36 CCPA 748, 1949 C.D. 34, 620 O.G. 345, and In re Bourdon, 240 F.2d 358, 44 CCPA 740, 716 O.G. 11.

We think there is a factual distinction between the present case and the cases relied upon by the board. Here, the feature of the bonding of the crests of the inner convoluted surface of the sheath to the plastic cover of the reinforcing helix is disclosed as a structural feature of the conduit. Thus, the specification says that "it is possible and sometimes desirable that this permanent association be confined substantially to a narrow path following the very outermost periphery of the wire as it is coiled." We construe this language as referring particularly to the alternate form of the

conduit as shown in Fig. 3 of the drawing which shows an adhesion between the sheath and the inner coil confined substantially to a narrow path which follows the very outermost periphery of the wire as it is coiled.

In referring to Fig. 3, the specification states:

"* * * the coating 13 of the wire 12 may be adhered to the envelope 14 only along a very narrow path following that portion of the outer periphery of the reinforcing member designated by number 23. Even though the actual area of adhesion between envelope and coated wire is thus somewhat limited, the envelope because of its moldable and elastic properties, may be made to embrace the wire turns over a substantial portion of their area. In such cases, this wire embracing, nonadhering portion of the envelope 14 is free to pull away from the wire to enlarge channel 22, but will return to its wire-embracing position upon a straightening of the hose."

The specification further states:

"Where the area of adhesion between the envelope and coated wire is thus limited, it follows that, upon severe flexing of the hose, the envelope will be pulled away from its position in the plane of the unflattened portions of the normally coaxially aligned reinforcement turns."

This feature of the limited area of bonding between the sheath and the inner reinforcing member was also claimed in original claims 11 and 13. Thus, original claim 11 calls for "the inner surface of said tube embracing said reinforcing member being bonded thereto at the crests of said corrugations leaving the innermost surface area of the coiled member exposed." Original claim 13 called for "said tube being bonded at its crests to the plastic surface of said turns."

The position of the examiner and the board is based essentially upon construing appellants' disclosure of this feature as if it was disclosed as but an incidental matter. Support for this view was found in appellants' use of the words "sometimes desirable" in describing in general terms the species of their invention shown in Fig. 3. We think the board's position on this point ignores the substantial teachings which we have found in the application as filed. These teachings indicate to us that this feature of the narrow area of bonding between the sheath and the reinforcing member is disclosed as an integral part of the invention and that appellants considered it to be a sufficiently important part of it that two of the original claims were directed particularly to this feature. We think any other construction of the disclosure as a whole is too narrow and is not justified.

Finding, as we do, that the disclosure of the narrow area of bonding was complete, we do not think the Gardiner and Bourdon cases, relied upon by the board, are applicable.

In the Gardiner case, the claimed limitation of "a diameter less than half the seat diameter" was based upon a disclosure of preference in the specification that the jet 52 should be made "of a diameter no greater than half the diameter of the pilot valve seat 50."

In the Bourdon case, the distinction which was urged over the prior art related to the specific modulus of elasticity and hardness of the rubber used in a tire casing. There was nothing in the specification which supported the position taken on appeal that these features were "critical."

The fact situations in Gardiner and Bourdon are thus quite different from that which is here involved. In each of these cases the criticality of features of claims were based upon almost casual statement of a "preference" in the specification.

For the foregoing reasons, the decision of the Board of Appeals is reversed.

Reversed.

JOHNSON, J., did not participate in decision.