51 CCPA

### Application of Henry I. BURR.
### Patent Appeal No. 7114.

United States Court of Customs and Patent Appeals.

March 19, 1964.

Rich and Smith, JJ., dissented.

Henry L. Shenier, New York City (Francis M. O'Connor, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Burr appeals from the board's affirmance of the rejection of his patent application.[1]

The invention relates to a memorandum book whose pages have a vertical line of perforations divided into a "record page portion" and an "appointment panel portion." The latter is divided by a horizontal line of perforations into "two appointment memorandum panels." Those bear respective legends indicating two successive dates. The book has a front cover with a hinge dividing it into two sections which are coextensive in area with the record and appointment panel portions of the pages. The axis of the hinge coincides with the vertical line of perforations. The section of the cover corresponding to the appointment panel portion of the pages can be folded along the hinge to expose the appointment panel while leaving the record portion of the page concealed. Because of the perforations, the two memorandum panels comprising the appointment panel are separately removable. Two allegedly advantageous features of the book are:

1. Serial No. 839,697, filed September 14, 1959.

the two memorandum panels permit a simultaneous glimpse of appointments for "today and tomorrow;" and the hinged cover permits exposure of a portion of the page while concealing the remainder from the view of a bystander.

Claim 5 reads:

"5. A record and memorandum book including in combination a cover, a plurality of leaves each forming a page, means for holding said leaves and said cover in assembled relationship to form said book, each of said leaves formed with a first line of perforations dividing each page into a permanent section and a removable section, a hinge in said cover for dividing the cover into first and second sections substantially co-extensive in area with the respective page sections, said hinge having an axis which registers with said first line of perforations when the cover is closed, each of said leaves provided with a second line of perforations extending inwardly from the edge of the leaf to said first line of perforations to divide the removable page portion into a pair of separable memorandum panels and respective legends indicating successive dates on the memorandum panels of each page, the legends of successive pages indicating a sequence of dates, the construction being such that the first cover section may be folded along the auxiliary hinge to expose removable page sections while concealing permanent page sections, the arrangement of said panels being such that legends corresponding to successive dates are exposed when the first cover section is folded."

The references relied on are:

Weber
(German) 893,639    October 19, 1953.
Brandt    361,122    April 12, 1887.
Smith    1,307,708    June 24, 1919.

Weber, the primary reference, discloses a record and memorandum book

wherein each page is divided by a vertical perforated line into a removable memorandum portion and a permanent record portion. The front cover is coextensive in area with the permanent record portions of each page thereby exposing only the removable memorandum portions of each page to view.

Brandt discloses a tablet having a hinged cover "so that the written matter on the upper portion will be hidden from the view of prying persons who may be standing close by."

Smith is relied on to show that it is old in the art to divide and subdivide pages of a memorandum book by perforation. Smith discloses a checkbook whose pages are divided by horizontal perforations. The permanent section is used to keep records of checks written.

The board sustained the examiner's holding that it would be obvious to one of ordinary skill in the art to modify Weber's record and memorandum book by providing it with a hinged cover to permit exposure of the removable section while concealing the permanent section from view as disclosed by Brandt. The board also held that it would be obvious to modify the removable memorandum panel of Weber by dividing it with horizontally perforated lines, a technique known to the makers of record and memorandum books as evidenced by the Smith patent. It also regarded the successive dating of the vertical subdivisions of Weber's memorandum panel as obvious.

Appellant contends that his memorandum book embodies a novel concept; that the board's modifications of Weber's memorandum book would not be obvious from the prior art but are the result of hindsight; and that even if Weber were so modified one does not obtain appellant's memorandum book having a unique "today and tomorrow feature."

We see no error in the board's holding. Brandt clearly suggests the desirability of a hinged cover to expose part of a page while concealing the balance. The central idea of a memorandum book

having a plurality of pages divided by a vertical line of perforations into temporary removable portions and permanent record portions is disclosed by Weber. At the top of the removable panel of Weber is a statement reminding the user that the items of business noted on the removable panel relate not to a particular day but to matters to be settled that week. The suggestion to divide the removable portions of the pages of Weber's book by horizontal perforated lines is clear from the disclosure of Smith. It seems to us that the successive dating feature of appellant's book would be a matter of common sense and would be particularly obvious to makers of memorandum books. · Indeed, the designation of the removable panel of Weber as covering a week's activities would make obvious the alternative of providing separately vertically distinct areas for each day of the week or for two or some other number of consecutive days, and Smith would suggest that such distinct areas be separated by horizontal perforations. Rather than being a case of hindsight, we are convinced that one of ordinary skill in this art, with the teachings of Weber, Brandt and Smith ·before him, would find it obvious to do what has been done.

The decision is affirmed.

Affirmed.

RICH, Judge (dissenting).

I join in Judge SMITH'S dissent.

A brief review of the references shows` how far from suggesting the claimed invention they are, taken separately or together.

Brandt is a tablet of *writing paper,* unperforated, with a hinged cover carrying a blotter. The paper is blank.

Smith is a 3-check-to-a-page *checkbook,* usual in every way except that the left-hand common stub portions of the pages are joined at their *top* edges.

Weber, the principal reference, is an appointment calendar with left-edge binding, the entire right-hand portion of each sheet being removable *as a single* *unit* by virtue of a single vertical line of perforations. The partial cover ends on the line of the underlying perforations. The removable portion is provided as a place to write memos of "things to be done this week."

Put all of these disclosures together in any desired combination and nowhere will the underlying concept of appellant's invention either appear or be suggested.

The majority conclusion that "The suggestion to divide the removable [weekly memo] portions of the pages of Weber's [weekly appointment] book by horizontal perforated lines is clear from the [checkbook] disclosure of Smith" is utterly unfounded. Everyone knows about checkbooks with three checks to a page. *Why* should such a book suggest to anyone horizontally perforating a page-edge portion entitled "things to be done this week," especially when it is attached to pages showing all the days of the week? A sheet of postage stamps would carry as much suggestion as the Smith checkbook, but perforations are not made without reason and the *reason* here is appellant's invention. ·

As to the thought of the majority that the successive dating feature of appellant's book would be obvious to makers of memorandum books, it becomes obvious by hindsight only *after* the concept of splitting the right edge into *two* sections for the very purpose of being *able* to date them successively. Thus the majority puts the cart before the horse since it is appellant's invention, not the prior art, which makes it obvious "to do what has been done."

SMITH, Judge (dissenting).

This dissent is predicated on my belief that the apparent *simplicity* of the physical embodiment of the claimed invention has been mistaken for *obviousness,* both in the Patent Office and in the majority opinion of this court.

It is true that each of the elements of appellant's claimed invention, save one, is disclosed by the references. But the missing element, the successive dat-

ing of the horizontally perforated memorandum panels, is an essential feature of appellant's invention. In my opinion, the absence of any suggestion of this feature in the prior art should lead to the conclusion that appellant has claimed a *patentable* invention. The hinged cover, the hidden record portion, the vertical perforations separating the permanent portion from the disposable portion, and the horizontal perforations are, individually, old concepts. Appellant, however, has assembled them into a new combination by the addition of the new feature which is not shown in the prior art.

The majority opinion states, "the successive dating feature of appellant's book would be *a matter of common sense* and would be particularly obvious to makers of memorandum books." [Emphasis added.] It seems to me the emphasized words point up the precise difficulty which is frequently encountered in dealing with relatively simple inventions: that is to dismiss the act of conception as merely "a matter of common sense" when viewed after the fact. As was said by Mr. Justice Story in Ryan v. Goodwin, 21 Fed.Cas.No.12,186, pp. 110, 111 (No. 12186) (C.C.D.Mass.1839):

> "* * * The combination is apparently very simple; but the simplicity of an invention, so far from being an objection to it, may constitute its great excellence and value. * * *"

These words, written so long ago, have continuing validity today. E. g., In re Sporck, 301 F.2d 686, 49 CCPA 1039.

I feel that, notwithstanding the fact that what appellant did seems simple when viewed after the event and perhaps may even be "a matter of common sense" *now that he has done it,* it cannot be fairly said that appellant's claimed invention would have been obvious in view of what had been done *prior to the time he made it.* It appears to me that the treatment of this case by the Patent Office and by the majority is not unlike that decried by this court in In re Roth-

ermel and Waddell, 276 F.2d 393, 396, 47 CCPA 866, 870–71, where we said:

> "The examiner and the board in rejecting the appealed claims did so by what appears to us to be a piecemeal reconstruction of the prior art patents in the light of appellants' disclosure. * * *

> "It is easy now to attribute to this prior art the knowledge which was first made available by appellants and then to assume that it would have been obvious to one having the ordinary skill of the art to make these suggested reconstructions. While such a reconstruction of the art may be an alluring way to rationalize a rejection of claims, it is not the type of rejection which the statute authorizes. 35 U.S.C. § 103 is very specific in requiring that a rejection on the grounds the invention 'would have been obvious' must be based on a comparison between the prior art and the subject matter as a whole at the time the invention was made."

I would, therefore, reverse the decision of the board.