55 CCPA

**Application of Peter P. NOZNICK, Charles W. Tatter and Carl F. Obenauf.**

**Patent Appeal No. 7901.**

United States Court of Customs and Patent Appeals.

April 11, 1968.

Alvin Guttag, Cushman, Darby & Cushman, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 13, 52, 53, 54, 55 and 56 of appellants' application for patent entitled "Sour Cream Powder." [1]

The application is directed to the production of a dry powder of sour cream. The powder is sold to dairies where it is reconstituted by the addition of water. The preferred embodiment of the invention as described in the application includes the addition of a peptizing agent which appears to aid in the reconstitution step. Claims reciting inclusion of the peptizing agent were allowed by the examiner. The appeal before us involves only claims which omit the recitation of the peptizing agent, but which do recite the presence of a "coating agent." While this admittedly was the nonpreferred embodiment in the application as filed, it is claimed to have become the preferred commercial embodiment of the invention.

The claimed invention with which we are involved is a process for making a spray-dried powder from sour cream, involving the steps of adding to the sour cream a coating agent for encapsulating the fat particles, homogenizing the mixture, and then spray drying. The coating agents disclosed are listed in the Markush group of claim 55. Claim 13 is a composition claim limited to approximately 82% sour cream solids and 18% gum acacia. The remaining claims are directed to specifically disclosed embodiments of the process and are encompassed by claim 55.

Claims 13 and 55 are reproduced below:

13. A spray dried free flowing sour cream powder containing approximately 82% sour cream solids and 18% gum acacia.

55. The process of making a sour cream powder comprising adding to sour cream 5 to 30% of a coating assisting agent selected from the group

I. Serial No. 197,837 filed May 28, 1962.

consisting of gum acacia, gum tragacanth, corn, wheat and potato starches, acid modified starches, phosphated starches, enzyme modified starches of the previous group, dextrins, pectins, carboxymethyl cellulose, nonfat milk solids, gelatin and casein, homogenizing the mixture and then spray drying the mixture.

The claims were rejected by the examiner under 35 U.S.C. § 103. The references are:

| | | |
|---|---|---|
| Bornegg | 1,800,501 | April 14, 1931 |
| Grelck | 2,009,135 | July 23, 1935 |
| Page et al. (Page) | 2,719,793 | October 4, 1955 |
| Cameron et al. (Cameron) | 2,913,342 | November 17, 1959 |

Bornegg teaches the addition of a water soluble gum such as gum arabic (acacia) as a drying aid for acid liquids which are to be spray dried. The liquids contemplated are "of plant, animal, and synthetic origin," and a specific example is lemon juice.

Grelck discloses spray drying of cultured milk products from which the albumin has been coagulated. The starting material of Grelck may be any one of a number of milk products including cream, and the viscosity of the product which is finally dried may be that of a heavy liquid.

Page describes addition of a gum to a sour cream product to prevent separation. Tragacanth gum is specifically mentioned; acacia is not. Page does not dry his product.

Cameron teaches encapsulation of fat compositions with water soluble solids such as gelatin and gum acacia followed by spray drying.

It was the position of the examiner that it would be obvious to spray dry the gum-containing sour cream of Page since Grelck teaches spray drying of a cultured cream product and Bornegg teaches the use of gum acacia as an aid in spray drying acid liquids. Cameron was cited to show gelatin being used as a substitute for gum acacia and to show that viscous emulsions may be spray dried. The examiner found no patentable significance in the recitation of specific proportions of gum and sour cream in view of the Bornegg disclosure that the amount of gum can vary widely depending upon the product to be dried. The board agreed with the examiner's reasons for the rejections.

In its opinion the board indicated that it was unimpressed by arguments presented by appellants alleging an unexpected result in that their product can be reconstituted with water without separation. The board commented:

> However, the superior properties on reconstitution to which appellants refer appear from the specification to be mainly attributable to the peptizing step, at least in part. In none of the examples except in Examples 9 and 12 is there used a coating agent without the peptizing agent; in Example 9 it is stated that the coating material alone is not as effective, but makes the product dryable, and in Example 12 appellants state that use of the peptizing agent was found to be preferable. * * *

Appellants took this to be a new ground of rejection, and filed a request for remand along with an affidavit by co-inventor Tatter purporting to show that spray-dried compositions prepared according to the application without peptizing agents are indeed redispersible in water to produce stable compositions. The board answered:

> We find no new grounds of rejection in our decision. It does not constitute a new ground of rejection to point out to an appellant why his arguments are not persuasive of error in the Examiner's rejection, nor does it

constitute an implied invitation to present belated showings to supply the deficiencies. * * *

It seems to us, as it did to the examiner and the board, that one skilled in the art would find it obvious to spray dry a cultured cream product such as Grelck teaches, and to add a coating agent prior to spraying to achieve the advantages taught by Bornegg. The addition of such a coating agent to sour cream specifically is suggested by Page, although for a different purpose. The teachings of Cameron reinforce our conclusion. As to the specific percentages recited in certain claims, we find nothing in the specification to indicate any criticality of such proportions. The claim seems to recite merely the optimum proportions for achieving an acceptable powder when using gum acacia. Since we find it obvious to spray dry the combination of acacia and sour cream, we also consider it obvious to vary the proportions of the two until a satisfactory ratio is found, particularly since Bornegg suggests that different proportions are needed for different liquids.

At oral argument, appellants' attorney stressed the different problems involved in spray drying a semi-solid such as sour cream and a thin liquid such as Bornegg's lemon juice. Such argument, however, does not dispose of Grelck or Cameron, both of whom spray dry viscous materials.

Appellants have attempted to overcome the holding of obviousness by arguing that they have achieved an unexpected result from their process—namely that their powder is water reconstitutable into a smooth cream whereas the Grelck product appears not to be so reconstitutable. As stated above, the board attributed this property to the peptizing step of the preferred embodiment, and therefore did not feel that the alleged unexpected result had any bearing on claims not reciting peptization.

Appellants vigorously contest this holding of the board. They claim that throughout the prosecution of the application they always made it clear that the presence of the coating agent alone yielded a reconstitutable product. This being so, they argue that the board's holding was a new ground of rejection, and that the board erred in not remanding the case to the examiner and in not considering the Tatter affidavit filed to answer the board's statements.

We have examined the specification and record in this case and are in complete agreement with the board. Although appellants cite certain portions of the specification and the various papers they filed during prosecution to support their contention, it appears that many of the quotations on which they rely in their brief are taken out of context.

For example, appellants refer to one sentence in their specification which states:

The coating agent improves the product appreciably in helping to secure adequate encapsulation and on reconstitution with water, improves the dispersibility and also precludes forming a curdy mass characterized by solids separation and precipitation.

However, they do not mention the two immediately preceding sentences of the same paragraph of their specification. The whole paragraph reads:

The peptizing agent and the coating or enrobing agent aid, as explained, in assuring encapsulation on the one hand and on the other hand, aids in the reconstruction with water to improve dispersibility and produce a smooth, creamy body. *Without the peptizing agent, on reconstitution with water, a curdy mass is produced from which the solids separate or precipitate out.* The coating agent improves the product appreciably in helping to secure adequate encapsulation and on reconstitution with water, improves the dispersibility and also precludes forming a curdy mass characterized by solids separation and precipitation.

While this paragraph is far from a model of clarity, its organization points to the conclusion that the second sen-

tence teaches nonreconstitutability when a coating agent alone is used with the sour cream. This sentence was cited by the solicitor in his brief, but appellants did not see fit to explain or comment on it in oral argument.

The remainder of the specification is not of much help on this point. Appellants point to Example 6, for instance, in support of their contention that coating agents alone yield a reconstitutable product. Their reliance is clearly misplaced, for Example 6 states:

> Each of the previous examples was repeated, including in the mixture a coating agent, namely, a gum such as gum acacia and corn starch respectively, these agents rendering the mix smooth and easily dryable and reconstitutable with water into a smooth cream. * * *

Reference to the specification shows that "each of the previous examples" included a peptizing agent. Example 6 therefore shows only the effect of coating agents in combination with peptizing agents.

Of the 22 examples in the specification, only examples 9, 12, 14a, 15a and 18 specifically show the use of a coating agent in the absence of a peptizing agent. None of these examples mentions reconstituting the powder. Example 9 indicates that the coating agent, though not as effective as the peptizing agent, makes the product dryable. Examples 12 and 18 indicate that use of the peptizing agent is preferable, but do not say why. Examples 14a and 15a merely report that powders were made using nonfat milk solids in place of disodium phosphate.

Appellants claim that their arguments during prosecution clearly showed that they considered the coating agent alone to be effective in producing a reconstitutable product. As one example, they quote from their amendment of August 21, 1963:

On the contrary, none of the patents teaches the spray drying of sour cream in such a manner that rehydration of the product yields a viscous material similar to the original sour cream.

Once again, appellants' propensity to quote only a portion of a paragraph is somewhat misleading, for the second and third sentences following the one quoted are:

> Thus, the function, for example of the peptizing agent to produce a powdered sour cream which is readily dispersible during rehydration is not suggested in the prior art. Similarly, the function of the coating agents to produce a sour cream which may be readily dried is likewise not suggested by the references of record.

The remainder of the record is similar. There are certain statements by appellants' attorneys during prosecution which may be read as indicating that a coating agent in the absence of a peptizing agent will produce a reconstitutable product. But there are also statements indicating that the peptizing agent alone is responsible for this property. There is no basis in the specification to conclude that the coating agent alone can yield a reconstitutable product, and no affidavits on the point were in the file as it went to the board. The board, faced with that record, was entirely correct in refusing to accord any weight to appellants' arguments of unexpected results. We do not feel that the board thus made a new rejection. The board was merely explaining to appellants why their arguments were ineffective to overcome the rejection made by the examiner.

It follows that the board was correct in refusing to consider the belated Tatter affidavit. It did not think the affidavit to be properly before them, and it is abundantly clear that an affidavit filed after a board decision, considered by neither the board nor the examiner, is not properly before this court.[2]

2. It is of more than passing interest to note that the affidavit, and accompanying exhibit which purports to show that sour cream containing coating agent but no peptizing agent is in fact reconstitutable, does not give the specific recipes for the two samples shown in the exhibit. It only says that one was pre-

In re Rothermel, 276 F.2d 393, 47 CCPA 866.

 We are of the opinion that the appellants have failed to support their allegation of unexpected results with any credible evidence. We agree with the board that the claimed invention before us is obvious under 35 U.S.C. § 103 for the reasons set forth by the board.

Affirmed.

SMITH, Judge (dissenting).

I respectfully dissent from the reasoning and conclusion of the majority on the merits. In addition, see In re Wiechert, 370 F.2d 927, 54 CCPA 957 (1967) for my views concerning a board consisting of two Acting Examiners-in-Chief, such as appears in this record.

pared as described in Example 11 and the other as described in Example 16. As indicated in our discussion above, we find it impossible to conclude from the specification whether a peptizing agent was used in these examples or not.

