**Application of Peter P. NOZNICK et al.**
**Patent Appeal No. 8908.**

United States Court of Customs and Patent Appeals.
June 7, 1973.

Alvin Guttag, Washington, D. C., attorney of record, for appellants, William T. Bullinger, Washington, D. C., Cushman, Darby & Cushman, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Associate Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection under 35 U.S.C. § 103 of claims 11–25 of appellants' application for patent entitled "Sour Cream Powder." [1] We reverse that decision.

The application involved is a continuation-in-part of serial No. 197,837 filed May 28, 1962.[2] That earlier application was the subject matter involved in this court's decision in In re Noznick, 391 F. 2d 946, 55 CCPA 1009 (1968). Here, as

---

1. Serial No. 728,317 filed May 10, 1968.

2. The record reveals that the application is also a continuation-in-part of serial No.

825,675 filed July 8, 1959 and now abandoned, serial No. 16,652 filed March 22, 1960 and serial No. 149,537 filed November 2, 1961 and now abandoned.

in that case, the invention with which we are concerned is a process for making a spray-dried powder from sour cream and the resulting product. The process requires the steps of adding to the sour cream a coating agent for encapsulating the fat particles in the cream, homogenizing the mixture and then spray drying. The resulting powder has the property of being readily dispersed in water for reconstitution of the sour cream. Claims were also presented for the process of redispersing the powder.

The broadest claims of each type, claims 11, 18 and 21, are reproduced below:

11. A spray dried free-flowing sour cream powder readily redispersible in water to produce a stable suspension comprising 95 to 70% sour cream solids and 5 to 30% of a coating agent selected from the group consisting of gum acacia, gum tragacanth, corn, wheat and potato starches, acid modified starches, phosphated starches, enzyme modified starches of the previous group, dextrins, pectins, carboxymethyl cellulose, nonfat milk solids, gelatin and casein.

18. A process of preparing the product of claim 11 consisting essentially of adding to sour cream 5 to 30% of the coating agent, homogenizing the mixture and then spray drying the mixture.

21. A process comprising redispersing the product of claim 11 in water to produce a stable suspension..

The remaining claims under rejection add limitations which are not material to our resolution of this case.

Appellants also disclosed in this application that a water reconstitutable sour cream product can be obtained by spray drying a mixture of sour cream and a protein peptizing agent such as sodium, potassium or ammonium phosphate. Optionally, an emulsifier and/or the coating agents enumerated in claim 11 can be included with the peptizing agent.

Claims to these combinations were allowed by the examiner.

The examiner and the board relied upon four references in reaching their conclusion that the invention was obvious within the meaning of 35 U.S.C. § 103. These references are:

| | | |
|---|---|---|
| Börnegg | 1,800,501 | April 14, 1931 |
| Fear et al. (Fear) | 2,671,729 | March 9, 1954 |
| Page et al. (Page) | 2,719,793 | October 4, 1955 |
| Cameron et al. (Cameron) | 2,913,342 | November 17, 1959 (filed July 27, 1956) |

In addition, appellants relied below upon the following reference:

| | | |
|---|---|---|
| Greick | 2,009,135 | July 23, 1935 |

Börnegg teaches the addition of a water soluble gum such as gum arabic (acacia) to liquids "of plant, animal and synthetic origin" which are then spray dried. The only example given of such a liquid is lemon juice. Using this process, liquids which otherwise form slimy adherent masses when sprayed dried can be obtained as "beautiful dry powders." An additional advantage is that the powder obtained in this way is nonhygroscopic and thus does not absorb moisture from the air. This improves its shelf life.

Fear discloses a process of treating skim milk to obtain a powdered buttermilk. The skim milk is treated with a basic agent such as calcium or magnesium oxide to reduce its acidity to a standard point. The standardized milk is heated and then flashed under reduced pressure to make a condensed milk that is innoculated with a bacillus to make a cultured buttermilk. The buttermilk is then heated and homogenized, if desired, and spray dried. Fear does not state that his product is redispersible in water. It is said to be useful in making ice cream and sherbets and can also be used in mixes for pancakes, doughnuts and the like.

The Page reference, the principal one relied upon by the examiner, describes the addition of tragacanth gum, an

agent used by appellants, to sour cream to inhibit syneresis, i. e., the separation of curd from whey. Page does not dry his product.

Cameron teaches that spray-dried emulsions of fat encapsulated with solids such as gum acacia and gum tragacanth can be reconstituted by adding water if, in the words of the reference, "there is included in said composition a partial ester of a glycol and a higher fatty acid." Examples of suitable fats are shortenings such as lard and those derived by hydrogenating vegetable oils such as cottonseed and peanut oils. Cameron does not mention sour cream.

Grelck, the reference relied upon by appellants, discloses the spray drying of cultured milk products, including a sour cream-like product, from which the albumen has been coagulated. A dry sour cream product obtained in this way is said to be incapable of being reconstituted by the addition of water.

In the earlier *Noznick* case, we affirmed a decision of the board sustaining a rejection of claims similar to those presented here. Claims 13 and 55 of the application involved there are as follows:

> 13. A spray dried free flowing sour cream powder containing approximately 82% sour cream solids and 18% gum acacia.

> 55. The process of making a sour cream powder comprising adding to sour cream 5 to 30% of a coating assisting agent selected from the group consisting of gum acacia, gum tragacanth, corn, wheat and potato starches, acid modified starches, phosphated starches, enzyme modified starches of the previous group, dextrins, pectins, carboxymethyl cellulose, nonfat milk solids, gelatin and casein, homogenizing the mixture and then spray drying the mixture.

Those claims had been rejected under 35 U.S.C. § 103 in view of a combination of Börnegg, Grelck, Page and Cameron. The Fear reference was not of record in that case. In affirming the board, the court said:

> It seems to us, as it did to the examiner and the board, that one skilled in the art would find it obvious to spray dry a cultured cream product such as Grelck teaches, and to add a coating agent prior to spraying to achieve the advantages taught by Bornegg. The addition of such a coating agent to sour cream specifically is suggested by Page, although for a different purpose. The teachings of Cameron reinforce our conclusion. As to the specific percentages recited in certain claims, we find nothing in the specification to indicate any criticality of such proportions.

At that time, appellants had argued that obtaining a water reconstitutable product was an unexpected result sufficient to overcome the rejection of obviousness and that this result had been ignored by the board in reaching its decision. With regard to this assertion, this court stated:

> There are certain statements by appellants' attorneys during prosecution which may be read as indicating that a coating agent in the absence of a peptizing agent will produce a reconstitutable product. But there are also statements indicating that the peptizing agent alone is responsible for this property. There is no basis in the specification to conclude that the coating agent alone can yield a reconstitutable product, and no affidavits on the point were in the file as it went to the board. The board, faced with that record, was entirely correct in refusing to accord any weight to appellants' arguments of unexpected results.

As a result of the decision adverse to them in that appeal, appellants were moved to file the application involved here. They now make it clear that a sour cream product capable of being reconstituted in water can be obtained by spray drying a mixture of the coating agent and sour cream alone. They have also submitted an affidavit that pur-

ports to show that the product derived from this process has enjoyed commercial success as further evidence that their invention would not have been obvious to one of ordinary skill in the art at the time it was made. However, the examiner and the board remained unconvinced. The board summarized its position as follows:

It [Fear] discloses a spray-dried cultured skim milk product, having an acidity of 4%, which is apparently reconstitutable with water in view of its use in making a smooth ice cream product which is not too resistant to proper melting * * *. It appears to be the examiner's view that in the light of this disclosure, or that of Bornegg, and that of Cameron et al. it would be obvious to spray-dry the sour cream of Page et al. He finds no persuasive evidence that there is anything unexpected in the property of the spray-dried sour cream being readily reconstituted with water, and further observes that it is not clear just what is intended by this limitation, e. g., whether the composition can be simply stirred gently into water or whether it requires readily available means of mixing which we would assume to include mechanical beaters or kitchen blenders. We find ourselves in agreement with the examiner's views; we would regard almost any dried product to be readily reconstitutable at least in the usual blenders found in modern kitchens.

We disagree with the board's assessment of the case in view of the added evidence of unobviousness embodied in the unexpected result now clearly set forth in appellants' specification. That specification also makes it clear that spray drying sour cream without a suitable agent leads to a product that cannot be reconstituted by the addition of water. That this fact was known to the prior art is evidenced by the Grelck reference wherein a dried sour cream-like product was obtained which could not be redispersed in water.

The board and solicitor criticize this interpretation of Grelck. In their view, the sour cream-like product of Grelck is rendered nondispersible in water because of a heat treatment to coagulate the albumen present in the cultured milk as a dispersion. However, appellants point out that spray drying itself is carried out at temperatures well in excess of those used by Grelck. This is shown by the Cameron and Fear references.

We cannot give any weight to the board's assertion that almost any dried product can be reconstituted with water using a modern blender. There is absolutely no foundation in the record upon which such a position can be based. Furthermore, even if what the board says is true, a product more easily reconstituted in water could be a welcome advance in the art.

In view of the fact that it was known to the prior art that a spray-dried sour cream could not be reconstituted by water, the issue of obviousness can be evaluated by asking whether there is any suggestion in the prior art of record to do what appellants have done, i. e., add a coating agent in the concentrations claimed to sour cream that is to be spray dried. We think that there is no such suggestion.

Our evaluation must start with Page, who after all does disclose that an agent such as gum tragacanth can be added to sour cream to prevent syneresis. However, that reference does not disclose any operative amount and no example of such use is given. Syneresis is the phenomenon observed for milk products wherein the curd separates from the whey. Since whey is the watery portion of milk products, it would appear that syneresis would not be a problem for spray-dried sour cream as the water is of course removed by the drying process. Therefore, if Page suggests anything, it would appear that his stabilizer would be unneeded for sour cream to be spray dried. Furthermore, there is nothing in the record to relate the amount of stabilizer to prevent syneresis with that re-

quired to accomplish reconstitution in water.

Börnegg teaches that a coating agent can be used where it is desired to obtain a dry and free-flowing powder from liquid materials that otherwise lead to adherent masses when spray dried. It seems clear from the record now before us that a dry powder can be obtained from sour cream without the use of added agents, albeit that powder cannot be reconstituted in water. Furthermore, there is no teaching in Börnegg that the coating agent used by him improves the reconstitution. In view of these facts, we cannot conclude that one skilled in the art would find in Börnegg any suggestion for using a coating agent with sour cream as sour cream in the dry state possesses those attributes that Börnegg was seeking without any added agent.

Cameron, as indicated above, is directed to making compositions from fats which are to be used as shortenings. Reconstitution of these compositions by adding water is attained only when the composition includes a partial ester of a glycol and a fatty acid. It seems clear that this teaches away from appellants' invention. If it suggests anything at all to one of ordinary skill in the art, it is that this partial ester is essential if reconstitution by water is desired.

In view of these references, we are of the opinion that appellants' discovery of a reconstitutable sour cream product is an advance in the art which would not have been obvious to one of ordinary skill in the art when that invention was made. When all of the pertinent art of record is considered, as indeed it must be, we find no suggestion of the desirability of adding a coating agent as set forth in claim 11 to a sour cream product that is to be spray dried.

We do not think that appellants' case against a conclusion that the invention was obvious is strengthened by the evidence of commercial success proffered in

an affidavit by Noznick, one of the co-inventors. In it he avers that a sour cream product made using a gum acacia coating agent enjoyed sales of over 1,200,000 pounds between January 1968 and July 1969, and that a similar product using nonfat skim milk solids as the coating agent enjoyed sales of over 1,1,700,000 pounds between March 1963 and July 1969.[3] These crude figures do not indicate whether the sales came at the expense of existing products. They are not related in any way to the total market of dried sour cream or sour cream itself. For all the record shows, the sales may be the result of advertising or other extraneous factors not related to the fact that the product can be reconstituted with water. In re Tiffin, 443 F.2d 394, 58 CCPA 1277 (1971). In other words, no nexus between the commercial success and the merits of the invention has been established. In re Caveney, 386 F.2d 917, 55 CCPA 721 (1967). However, for the reasons we have given above, it is our opinion that the decision of the board should be reversed.

Reversed.

3. The sales figures given are not for the complete period as no sales are given for the period November 1965 to December 1967.